UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JAMES R. BRUNO,

                Plaintiff,

-against-                              7:13-CV-1396 (LEK/TWD)

CASELLA WASTE SYSTEMS, INC.,

                Defendant.

_____

## DECISION and ORDER

### I.    INTRODUCTION

Plaintiff James R. Bruno ("Plaintiff") commenced this action seeking a declaration of his rights under an escrow agreement he entered into with Defendant Casella Waste Systems, Inc. ("Defendant"), and various other parties. Dkt. Nos. 1-1 ("Complaint"); 8-2 ("Escrow Agreement"). Presently before the Court is Defendant's Motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(b)(7), and 19. Dkt. No. 8 ("Motion"). For the following reasons, the Court grants the Motion.

### II.    BACKGROUND[1]

Plaintiff is a resident of St. Lawrence County, New York. Compl. ¶ 1. Plaintiff, along with three other individuals (collectively, the "WS Principals"), collectively owned several business entities in New York (the "WS Entities"). Id. ¶¶ 3-4. On October 22, 1998, the WS Principals and

---

[1] Because this case is before the Court on a motion to dismiss for failure to state a claim, the allegations of the Complaint are accepted as true and form the basis of this section. See Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor").

the WS Entities executed a Merger and Reorganization Agreement with Defendant and several of its corporate subsidiaries. Id. ¶ 4; Dkt. No. 8-2 ("Merger Agreement"). The Merger Agreement provided that Defendant would issue a specified number of shares of its capital stock (the "Merger Shares") to the WS Principals as consideration. Compl. ¶ 5. Ten percent of the Merger Shares (the "Specific Escrow Shares") were required to be placed in escrow with an Escrow Agent pursuant to the Escrow Agreement. Id.; Merger Agreement § 1.7; Escrow Agreement.[2] The Merger Agreement provided that the Specific Escrow Shares were to serve as security for the WS Principals' indemnification of Defendant and the WS Entities (the "Indemnified Persons") for certain possible damages related to the Merger Agreement. Compl. ¶ 6. The Escrow Agreement was executed on October 29, 1998, and the Specific Escrow Shares were placed in escrow with the Escrow Agent. Compl. ¶ 7.

The Escrow Agreement provided that if an Indemnified Person incurred or suffered damages for which it was entitled to seek indemnification, it was required to give notice of its indemnification claim (a "Specific Escrow Claim Notice") to two specified WS Principals, and to the Escrow Agent, prior to the Specific Escrow Termination Date. Id. ¶ 8. The Specific Escrow Termination Date was defined as the fifth anniversary of the date of the Escrow Agreement—i.e., October 29, 2003. Id. The Escrow Agreement also required that any Specific Escrow Claim Notice include (1) a statement of the amount of claimed damages, (2) the basis of the claim, and (3) reasonably specific details of the individual items comprising the claimed damages. Id. ¶ 9.

The Escrow Agreement provided that no later than five business days after the Specific

---

[2] The Court may consider the Merger and Escrow Agreements because the Complaint incorporates them by reference. See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Compl. ¶ 5.

2

Escrow Termination Date, the Escrow Agent was required to distribute the Specific Escrow Shares to the WS Principals, except for that proportion of the Specific Escrow Shares for which a Specific Escrow Claim Notice had been given prior to the Specific Escrow Termination Date. Id. ¶ 10; Escrow Agreement § 5.a. Additionally, the Escrow Agreement provided that if a Specific Escrow Claim Notice was given but not resolved as of the Specific Escrow Termination Date, the Escrow Agent would retain the shares in escrow until the claim was resolved. Id. ¶ 11.

Pursuant to these provisions, Defendant sent a notice dated November 13, 2001, and sent a supplemental notice dated October 27, 2003. Compl. ¶ 14. The supplemental notice was, according to Plaintiff, untimely, and the notices failed to comply with the content requirements of the Escrow Agreement. Compl. ¶¶ 15-16. Plaintiff alleges that 57,414.177 shares remain in escrow, and that he is entitled to one-third of these shares. Compl. ¶ 18.

Plaintiff commenced this action in St. Lawrence County Supreme Court on July 19, 2013, and Defendant removed it on November 8, 2013, based on diversity jurisdiction. Dkt. No. 1 ¶¶ 1, 5-12. Plaintiff seeks: (1) a declaration that no Specific Escrow Claim Notice was timely given prior to the Specific Escrow Termination Date; (2) alternatively, if a Specific Escrow Claim Notice was timely given, a declaration that, with the exception of 1,892.83 Specific Escrow Shares, no valid Specific Escrow Claim Notice was given; and (3) a declaration that the Escrow Agent must release one-third of the remaining Specific Escrow Shares to Plaintiff. Compl.

Defendant filed its Motion on November 20, 2013, seeking dismissal based on, *inter alia*, statute of limitations grounds. Dkt. No. 8-7 ("Memorandum") at 9-10. Plaintiff filed a Response and Defendant filed a Reply. Dkt. Nos. 13-3 ("Response"); 14 ("Reply").

## III. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678-79.

## IV. DISCUSSION

Defendant argues, *inter alia*, that Plaintiff's claims are time-barred because his right to release of the Specific Escrow Shares arose no later than November 3, 2003. Mem. at 9-10.

The Escrow Agreement contains a choice-of-law clause providing that it be governed by and construed in accordance with Massachusetts law. Escrow Agreement § 14.a. Accordingly, the

Court looks to Massachusetts law in determining the timeliness of Plaintiff's claim. See Shimizu Corp. v. Dow Roofing Sys., LLC, No. 11-30085, 2013 WL 5513035, at *9-10 (D. Mass. Sept. 27, 2013); Newburyport Five Cents Sav. Bank v. MacDonald, 718 N.E.2d 404, 406-07 (Mass. App. Ct. 1999).

"'In determining which if any statute of limitations applies to a claim, the court must look to the essential nature of that claim.'" John Beaudette, Inc. v. Sentry Ins. A Mut. Co., 94 F. Supp. 2d 77, 98 (D. Mass. 1999) (citing Dep't of Revenue of the Commonwealth of Massachusetts v. The Mailhouse, Inc., No. CIV.A. 96-5390F, 1997 WL 573212, at * 3 (Mass. Super. Ct. Aug. 5, 1997)). "An action for declaratory relief 'is a procedural device' and therefore time barred to the extent the direct or underlying substantive claim is also time barred." Id. (citing Stone v. Williams, 970 F.2d 1043, 1048 (2d Cir. 1992)). A declaratory judgment cannot be used to circumvent statutes of limitations. Page v. LeRoux, 685 N.E.2d 1205, 1207 (Mass. App. Ct. 1997); see also Stefanick v. Planning Board of Uxbridge, 657 N.E.2d 475, 478 (Mass. App. Ct. 1995) (stating that "permissible expedient of a complaint for declaratory relief . . . does not suspend" application of statute of limitations). Here, Plaintiff's suit concerns the construction and application of the Escrow Agreement. See generally Compl.; Resp. Accordingly, the six-year statute of limitations for breach of contract actions applies. See MASS. GEN. LAWS ch. 260, § 2; John Beaudette, 94 F. Supp. 2d at 98; Page, 685 N.E.2d at 1207. "A cause of action for breach of contract generally accrues at the time of the breach." Keane, Inc. v. Swenson, 81 F. Supp. 2d 250, 254 (D. Mass. 2000).

Plaintiff ultimately seeks a declaration that he is entitled to release of the Specific Escrow Shares because no valid Specific Escrow Claim Notice was timely given. Compl.; Resp. at 7-10. Plaintiff concedes that the breach of contract statute of limitations applies, but argues that no breach

has occurred, and so the statute never began to run. Resp. at 11-12.  Rather, Plaintiff asserts that Defendant's failure to give a valid, timely notice constituted only a failure to fulfill a condition precedent, not a breach.  Id.  However, Plaintiff elsewhere clearly argues that, under the Escrow Agreement, the Escrow Agent must release the shares to Plaintiff—in other words, the Escrow Agent's failure to release the shares within five days of the Specific Escrow Termination Date constituted a breach.  See Resp. at 9-10; Compl. ¶¶ 17-18; Escrow Agreement § 5.a. ("Promptly after the . . . Specific Escrow Termination Date . . . (but in any event within five business days thereafter), the Escrow Agent *shall* distribute to the Indemnifying Parties all of the . . . Specific Escrow Shares . . . ." (emphasis added)).  Plaintiff's claim therefore accrued on November 2003—more than nine years before he commenced this action.

That Plaintiff failed to name the Escrow Agent in this suit does not change the outcome. The essential nature of Plaintiff's claim is a breach of contract allegation against the Escrow Agent; that breach occurred well outside the limitations period.  Plaintiff cannot circumvent the time bar by recharacterizing his claim as a declaratory judgment action against Defendant.  Page, 685 N.E.2d at 1207; see also Naranjo v. Dep't of Revenue, 825 N.E.2d 1051, 1058 (Mass. App. Ct. 2005) (stating that in a Massachusetts declaratory judgment action, the statute of limitations begins when "an actual controversy has arisen between the parties creating a right to secure a judicial declaration").

Because the Complaint is subject to dismissal for untimeliness, the Court need not consider the parties' remaining arguments.  See Callahan v. Wells Fargo & Co., 747 F. Supp. 2d 247, 251 (D. Mass. 2010).

## V. CONCLUSION

Accordingly, it is hereby:

6

**ORDERED**, that Defendant's Motion (Dkt. No. 8) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(7) is **GRANTED**; and it is further

**ORDERED**, that the Complaint (Dkt. No. 1-1) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court close this case; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

DATED: September 29, 2014
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge